# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2254

_____

| | | |
|---|---|---|
| Trustees of the Graphic | * | |
| Communication International Union | * | |
| Local 1B Health and Welfare | * | |
| Fund "A";  Trustees of the Graphic | * | |
| Communication International Union | * | |
| Local 1B Heath and Welfare | * | |
| Fund "B", | * | Appeal from the United States |
| | * | District Court for the |
| Appellees, | * | District of Minnesota. |
| | * | |
| v. | * | |
| | * | |
| Tension Envelope Corporation, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  May 14, 2004
Filed:   July 7, 2004

_____

Before WOLLMAN, HAMILTON,[1] and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

This case involves a dispute between the trustees of two multiemployer trust funds and an employer who participates in the funds.  The employer's contributions

_____

[1]The Honorable Clyde H. Hamilton, United States Circuit Judge for the Fourth Circuit, sitting by designation.

to the funds were governed in part by a Collective Bargaining Agreement (CBA) between it and its unionized employees. The employer entered into a Side Letter with the union to limit trust fund contributions for medical and dental benefits to a single monthly premium for employees married to each other, since one spouse would be covered as a dependent of the other. The trustees sued, contending the employer must continue to pay a monthly premium for each spouse, as it had been doing since 1990.

The trustees moved for summary judgment, and the district court[2] granted the motion. The district court determined 1) the trust fund agreements and the CBA conflicted; 2) in the case of a conflict, the trust fund agreements controlled; and 3) the trust fund agreements required the employer to pay contributions for *all* employees. In the alternative, the district court noted the Side Letter, by its own terms, would be withdrawn if "a prior agreement" obligated the employer to pay for both spouses. The district court held the employer's agreement to participate in the trust funds, and past practice of paying contributions for each spouse, constituted "a prior agreement" and thus the Side Letter was ineffective. With this alternative ground we agree, and therefore affirm without reaching the purported conflict between the trust fund agreements and the CBA.

I

On February 14, 1990, Tension Envelope Corporation began participating in two multiemployer trust funds established pursuant to § 302(c)(5) of the Labor Management Relations Act of 1947 (LMRA), 18 U.S.C. § 186(c)(5), and governed by the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461. Trust Fund A provides medical benefits, along with life and disability insurance, while Trust Fund B provides dental benefits to its participants.

---

[2]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

Tension's participation in the trust funds was memorialized in a Participation Agreement, which contemplated a CBA would govern Tension's obligations to contribute monthly premiums on behalf of its employees. Specifically, the Participation Agreement indicated it "does not . . . modify or supersede any side agreement entered into between an Employer and the Union, or alter any other provision of the Labor Agreement [CBA]." The trust fund documents in turn provided the contributions required of any employer were to be "governed by the . . . applicable collective bargaining agreements." The CBA pertinent to this litigation was effective between April 1, 2000, and March 31, 2004; Articles 26 (medical benefits) and 27 (dental benefits) of the CBA governed the contributions to be made to the trust funds.

As required by the pertinent CBA and its predecessors, Tension has contributed monthly premiums to the trust funds on behalf of each of its eligible employees, including those married to each other, since it began participating in the trust funds in 1990. On April 9, 2002, however, Tension entered into a Side Letter with the Union purporting to amend the terms of the CBA. The Side Letter provided "[w]ith respect to Article 26, if there are eligible employees married to one another, the Employer will pay only one monthly premium, and the spouse would be covered as a dependent on the other employee and would not pay any monthly medical contribution amount." The Side Letter contained a similar provision regarding dental benefits under Article 27.[3] Both provisions contained the following condition: "If the Union can provide documentation of a prior agreement where the Employer agreed to pay for both spouses, the Employer will withdraw this subparagraph."

---

[3]The Side Letter affected five married couples who worked for Tension – Petar and Spomenka Budisa, Armin and Fatma Dzihic, Muharem and Nusreta Huskic, Ahmet and Fikreta Jaganjac, and Norman and Sonja Marsolek.

Tension provided a copy of the Side Letter to the board of trustees who operate the trust funds. The trustees discussed the Side Letter during a June 20, 2002, meeting. In July 2002, Tension contributed just a single medical and dental monthly premium to the trust funds for each of the five married couples affected by the Side Letter. That same month, the trustees filed suit against Tension contending another monthly medical and dental premium should be paid to the trust funds for each of the five married couples. The parties brought cross-motions for summary judgment. Tension filed a timely appeal after the district court granted the trustees' motion.

II

We review the district court's grant of summary judgment de novo "and will affirm if we determine there are no genuine issues of material fact and that judgment as a matter of law is appropriate." Bhd. of Locomotive Eng'rs v. Kansas City S. Ry. Co., 26 F.3d 787, 791 (8th Cir. 1994). In reviewing the grant of summary judgment, we likewise review de novo the district court's interpretation of unambiguous contract language. Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 470 (8th Cir. 2004).

Although the trustees posit several reasons for affirming the district court, we address only one – their contention the Side Letter contains a condition precedent that nullifies its provision permitting one premium per married couple. The Side Letter provided Tension would withdraw the one-premium provision if there was "a prior agreement where the Employer agreed to pay for both spouses." The trustees argue Tension's agreement to participate in the trust funds, and Tension's concomitant obligation to provide premium payments for each of its participating employees, satisfy this condition precedent and nullify the Side Letter.

The language of the Side Letter is unambiguous and provides that if, prior to the execution of the Side Letter, Tension had agreed to contribute monthly premiums

-4-

for both spouses, the one-premium provision would be withdrawn. Tension's agreement to participate in the trust funds satisfies this condition. By signing the Participation Agreement, Tension "agree[d] to be bound by the Agreement and Declaration of Trust establishing the Fund, together with any amendments thereto and the rules and regulations adopted thereunder." The trust agreements in turn required Tension to make "contributions at the level required by the Trustees . . . on behalf of *each* participant who is to receive benefits under this Fund." (Emphasis added).

It is undisputed employess married to each other were participants entitled to receive benefits under the trust funds, as evidenced by Tension's continuous payment of monthly premiums on behalf of each spouse since it began participating in the trust funds in 1990. Thus, prior to the execution of the Side Letter, Tension clearly had a contractual obligation to pay for both spouses pursuant to its participation in the multiemployer trust funds. Tension's agreement to participate in the trust funds also triggered a legal obligation to pay for each participant. See 29 U.S.C. § 1145 ("Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."). We conclude this contractual (and corresponding legal) obligation was such "a prior agreement where the Employer agreed to pay for both spouses" and therefore satisfies the Side Letter's nullifying condition.

Tension argues this is an unreasonable reading of the Side Letter, because Tension would effectively be precluded from ever negotiating the universe of benefit-eligible employees for whom it must make a contribution to the trust funds. Tension claims this "eternal status quo interpretation" is unreasonable because Tension's "contribution obligation would be frozen from 1990 through eternity." Tension's Brief at 26-27. See Bd. of Trs. of the Watsonville Frozen Food Welfare Trust Fund v. Cal. Coop. Creamery, 877 F.2d 1415, 1426 (9th Cir. 1989) (suggesting a court

cannot "ignore the possibility of any future negotiations between the company and the union regarding employee benefits").

Tension's argument is flawed. Our interpretation of the Side Letter's condition is not the problem – the problem is the condition itself. Our holding does not forever bar Tension from negotiating with the Union about which employees will be covered by the trust funds. Certainly, Tension was not required to add the nullifying condition, but having chosen to include the condition, we have no choice but to interpret it according to its own terms. Without expressing any opinion on whether the trust agreements would otherwise allow Tension to limit contributions to a single monthly premium per employee couple, we note Tension is certainly free to negotiate another Side Letter with the Union that does not include a condition referring to "a prior agreement where the Employer agreed to pay for both spouses."

III

We affirm the judgment entered in the district court in favor of the trustees.

_____